SYLVIA LAM
Trial Attorney
Environmental Enforcement Section
Energy and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 598-1892
Email: sylvia.lam@usdoj.gov

SHANNON L. CLARKE
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329 Missoula
Missoula, MT 59807
101 E Front St, Ste 401
Missoula, MT 59802
Phone: (406) 542-8851
E-mail: shannon.clarke@usdoj.gov

UNITED STATES DISTRICT COURT
IN THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FT. HARRISON VETERANS RESIDENCES, LP<br><br>&<br><br>BENEFICIAL FT. HARRISON VETERAN RESIDENCES, LLC<br><br>Defendants. | Case No. CV-26-65-H-KLD |

## COMPLAINT

The United States of America, by authority of the Attorney General and at the request of the United States Environmental Protection Agency (EPA) and the United States Department of Housing and Urban Development (HUD), alleges in its complaint against Defendants Ft. Harrison Veterans Residences, LP (FHVR) and Beneficial Ft. Harrison Veteran Residences, LLC (collectively, "Defendants") as follows:

1. The United States brings this civil action against Defendants for violations of Title IV of the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2681 *et seq*., the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4852d, and associated regulations. Through this action, the United States seeks injunctive relief to address Defendants' repeated violation of these laws and regulations, which are designed to protect the public from lead poisoning.

2. Due to the toxic nature of lead-based paint, abatement of lead-based paint and certain renovation work in certain residential housing must be performed by properly certified workers and firms. Tenants who move into most housing constructed before 1978 must also be given certain disclosures about the presence of, and the risks associated with, lead-based paint. Defendant FHVR is a developer that offered to abate lead-based paint and renovate housing facilities owned by the United States and agreed to subsequently lease the housing to veterans and their

families in Fort Harrison, Montana under the HUD-Veterans Affairs Supportive Housing (HUD-VASH) program (the property is known as "Freedom's Path Ft. Harrison"). Defendant FHVR is not an EPA-certified lead abatement firm or renovation firm, but Defendant FHVR received compensation for purported abatement of lead-based paint in housing at Freedom's Path Ft. Harrison. And Defendant FHVR failed to provide required disclosures to tenants about the dangers of lead-based paint in and around this housing.

3. Lead poisoning, particularly in children, can lead to severe health problems. Children are easily poisoned in the home when they put lead-based paint flakes in their mouths or ingest lead-contaminated dust. A child's exposure to even small amounts of lead can cause irreversible neurological problems, including learning disabilities, reduced attention span, and behavioral problems. Even for adults, ingestion of small amounts of lead can cause or exacerbate serious health conditions, including cancer, hypertension, and kidney failure.

4. To protect the public health, Congress enacted the Residential Lead-Based Paint Hazard Reduction Act of 1992, which created Title IV of TSCA, 15 U.S.C. § 2681 *et seq*.

5. Addressing Defendant FHVR's misconduct is a public health necessity. FHVR operates Freedom's Path Ft. Harrison and provides supportive housing for veterans who have experienced homelessness and their families.

Preventing Defendant FHVR from exposing these veterans and their families to potential lead hazards is vital to protecting this population.

6. Defendant FHVR also receives payments directly from tenants. Together, the housing assistance payments and the tenant payments generally equal market rent.

7. In accordance with TSCA, EPA promulgated several regulations at 40 C.F.R. Part 745, including Subpart L (the "Abatement Rule"), which regulates abatement and other lead-based paint activities; and Subpart E (the "Renovation, Repair, and Painting Rule" or "RRP Rule"), which regulates certain renovations, repair, and painting work in housing or child-occupied facilities built prior to 1978. In accordance with the Residential Lead-Based Paint Hazard Reduction Act of 1992, EPA and HUD promulgated regulations at 40 C.F.R. Part 745 Subpart F and 24 C.F.R Part 35, Subpart A (the "Lead Disclosure Rule"), which require certain disclosures about lead-based paint that must be given to tenants and purchasers of most homes constructed before 1978 before any lease or sale.

8. Defendant FHVR's conduct violates the Abatement Rule, the RRP Rule, and the Lead Disclosure Rule.

9. Upon information and belief, the United States alleges that to date:

a. The homes that are the subject of this Complaint have not been properly abated of lead-based paint, nor have the

lead-based paint and bare soil been maintained in a safe condition.

b. The tenants that reside in the homes that are the subject of this Complaint have not received adequate lead-based paint disclosures.

c. Defendant FHVR has not shown that its operation and maintenance of Freedom's Path Ft. Harrison has complied with the RRP Rule.

10. The United States brings this action for an order that compels Defendants to comply with TSCA by properly abating lead-based paint in the homes at issue in this Complaint and by providing the required disclosures to the tenants that live in these homes, as well as an order that compels Defendants to permanently comply with TSCA. The United States seeks injunctive and other equitable relief for violations of the Abatement Rule (40 C.F.R. Part 745, Subpart L), the RRP Rule (40 C.F.R. Part 745, Subpart E), the Lead Disclosure Rule (24 C.F.R. part 35, Subpart A, and 40 C.F.R. Part 745, Subpart F), and TSCA, 15 U.S.C. § 2689.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action. 28 U.S.C. §§ 1331 and 1345; 15 U.S.C. § 2616; 42 U.S.C. § 4852d(b)(2) and (5).

12. Venue is proper in this district because the violations occurred in this district and because Defendant FHVR is registered to do business in this district. 28 U.S.C. § 1391(b), (c).

## THE PARTIES

13. Plaintiff is the United States of America on behalf of EPA and HUD.

14. Defendant FHVR is a Florida limited partnership, with its principal place of business located at 2 North Tamiami Trail, Suite 800, Sarasota, Florida 34282. Defendant FHVR is registered to do business in Montana.

15. Defendant Beneficial Ft. Harrison Veteran Residences, LLC, a Florida LLC, is the general partner of Defendant FHVR.

16. Defendant Beneficial Ft. Harrison Veteran Residences, LLC is registered to do business in Montana.

17. General partners of Florida limited partnerships are jointly and severally liable for all obligations of the limited partnership, unless otherwise provided by law. Fla. Stat. § 620.1404(1).

## STATUTORY AND REGULATORY BACKGROUND

18. Lead is toxic. *See* Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4851. Even "at low levels, lead poisoning in children causes intelligence quotient deficiencies, reading and learning disabilities, impaired hearing, reduced attention span, hyperactivity, and behavior problems." *Id.* In 1992, Congress found that low-level lead poisoning was widespread in children under six years old. *Id.* This was despite the fact that in 1977, the federal government had banned the use of lead-containing paint in residences built in 1978 or later. 16 C.F.R. § 1303.1(a). Lead paint had been frequently used in residences prior to that date and continues to be present in many pre-1978 residential buildings across the country.

19. In 1992, Congress enacted the Residential Lead-Based Paint Hazard Reduction Act of 1992, "to encourage effective action to prevent childhood lead poisoning by establishing a workable framework for lead-based paint hazard evaluation and reduction"; "to ensure that the existence of lead-based paint hazards are taken into account in the . . . sale, rental, and renovation of homes and apartments"; and "to educate the public concerning the hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." 42 U.S.C. § 4851a. Section 1021 of the Act amended TSCA by adding a new Title IV, titled "Lead Exposure Reduction." 15 U.S.C. §§ 2681 *et seq.* Among other things,

Congress directed EPA and HUD to promulgate regulations requiring disclosure of information concerning lead-based paint to tenants and buyers of most pre-1978 residential properties; amended the previously enacted Lead-Based Paint Poisoning Prevention Act to require HUD to promulgate various inspection, risk assessment, interim control, and abatement requirements for federally subsidized housing; and amended TSCA to require EPA to promulgate lead-based paint safety regulations. Residential Lead-Based Paint Hazard Reduction Act of 1992, Public Law 102-550, Title X, § 1012 (principally codified at 42 U.S.C. § 4822); *id.* § 1018 (codified at 42 U.S.C. § 4852d); *id.* § 1021 (codified at 15 U.S.C. ch. 53, subch. IV).

20. In accordance with these authorities, EPA promulgated the Abatement Rule as well as the RRP Rule, and EPA and HUD jointly promulgated the Lead Disclosure Rule.

21. Congress defined "target housing" to mean any housing constructed prior to 1978, except housing for the elderly or persons with disabilities or any zero-bedroom dwelling (unless any child who is less than six years of age resides or is expected to reside in such housing). 42 U.S.C. § 4851b(27).

22. The Abatement Rule, the RRP Rule, and the Lead Disclosure Rule generally apply to target housing.

*The Abatement Rule*

23. Section 402(a) of TSCA, 15 U.S.C. § 2682(a), requires EPA to promulgate regulations governing lead-based paint activities (including abatement) to ensure that individuals engaged in such activities are properly trained, that training programs are accredited, and that contractors engaged in such activities are certified.

24. In 1996, in accordance with Section 402(a) of TSCA, 15 U.S.C. § 2682(a), EPA promulgated the Abatement Rule.

25. The Abatement Rule prohibits individuals and firms from offering to perform or performing any lead-based paint activity (as defined in 40 C.F.R. Part 745, Subpart L), including abatement, unless certified to perform that activity according to the procedures in 40 C.F.R. § 745.226. 40 C.F.R. § 745.233.

26. For lead-based work in states that have not been authorized to administer a lead abatement certification program under 15 U.S.C. § 2684 and 40 C.F.R. Part 745, Subpart Q, the Abatement Rule requires, among other things, that firms performing abatements of pre-1978 housing must:

a. notify EPA of their activities at least five full business days before those activities commence, 40 C.F.R. § 745.227(e)(4);

b. develop a written occupant protection plan unique to each dwelling that describes the measures and management procedures to be taken to protect occupants from exposure to lead-based paint hazards, 40 C.F.R. § 745.227(e)(5);

c. restrict certain dangerous work practices, 40 C.F.R. § 745.227(e)(6);

d. have a certified inspector or risk assessor conduct a post-abatement visual inspection for deteriorated paint, dust, debris, or residue and eliminate them if present, 40 C.F.R. § 745.227(e)(8)(i);

e. have a certified inspector or risk assessor conduct post-abatement sampling for lead in dust to ensure dust levels under the action level, 40 C.F.R. § 745.227(e)(8)(ii);

f. prepare an abatement report, 40 C.F.R. § 745.227(e)(10); and

g. ensure that all abatement activities are conducted according to the requirements of the Abatement Rule and all other federal, state and local requirements, 40 C.F.R. § 745.227(e)(3).

27. Montana has not been authorized to administer a lead abatement certification program under 15 U.S.C. § 2684 and 40 C.F.R. Part 745, Subpart Q.

*The RRP Rule*

28. Section 402(c) of TSCA, 15 U.S.C. § 2682(c), requires EPA to promulgate guidelines for the conduct of renovation and remodeling activities in buildings constructed before 1978 in order to reduce the risk of exposure to toxic lead dust and debris in connection with such activities.

29. To address this concern, in 2008, EPA promulgated the RRP Rule under TSCA section 402(c), 15 U.S.C. § 2682, establishing certification requirements for individuals and firms performing renovations in target housing, mandating specific work practice standards for regulated projects, and requiring delivery of educational materials to owners and occupants to ensure they understand the risks of lead exposure before renovations begin.

30. "Renovation" is defined broadly to include "the modification of any existing structure, or portion thereof, that results in the disturbance of painted surfaces" and includes work such as "the removal of building components (e.g., walls, ceilings, plumbing, windows)" and "[t]he removal, modification or repair of painted surfaces or painted components (e.g., modification of painted doors, surface restoration, window repair, surface preparation activity (such as sanding, scraping, or other such activities that may generate paint dust))." 40 C.F.R.

§ 745.83. Certain "minor repair and maintenance activities" may be excluded from the definition of "renovation," including certain interior work affecting six or fewer square feet of painted surfaces, provided that the work does not involve demolition of painted surfaces, window replacement, or other practices prohibited by 40 C.F.R. § 745.85(a)(3). 40 C.F.R. § 745.83.

31. The RRP Rule requires that a firm performing, offering to perform, or claiming to perform covered renovations obtain an EPA certification. *Id.*; 40 C.F.R. §§ 745.81(a)(2)(ii) & 745.89.

32. The RRP Rule also requires the provision of safety information designed to alert individuals in the vicinity of the renovation work area to the risks of lead exposure. Under the RRP Rule, renovation firms must provide a pamphlet titled "Renovate Right: Important Lead Hazard Information for Families, Child Care Providers, and Schools" (the "Renovate Right pamphlet"), EPA# EPA-740-K-10-001, to the adult occupant of applicable housing before renovations begin, and must obtain either a written acknowledgment of receipt of the pamphlet from the adult occupant, or a certificate of mailing of the pamphlet. 15 U.S.C. § 2686; 40 C.F.R. §§ 745.81(b) & 745.84(a). Firms must then retain the written acknowledgement or certificate of mailing for a period of 3 years following completion of the renovation. 40 C.F.R. §§ 745.84(a), 745.86(b) &745.89(d).

33. Violation of the Abatement Rule and/or the RRP Rule is a prohibited act under Section 409 of TSCA, 15 U.S.C. § 2689, and thus constitutes a violation of the statute.

*The Lead Disclosure Rule*

34. The Residential Lead-Based Paint Hazard Reduction Act of 1992 requires EPA and HUD to promulgate regulations regarding the disclosures of lead-based paint hazards in target housing that sellers and lessors must provide to prospective purchasers and lessees of such housing. 42 U.S.C. § 4852d(a)(1).

35. In 1996, EPA and HUD jointly promulgated the Lead Disclosure Rule under 42 U.S.C. § 4852d(a)(1) to impose certain requirements on the sale or lease of target housing. 40 C.F.R. Part 745, Subpart F (EPA's Lead Disclosure Rule); 24 C.F.R. Part 35, Subpart A (HUD's Lead Disclosure Rule).

36. Under the Lead Disclosure Rule, lessors include any entity that offers target housing for lease, rent, or sublease, including but not limited to individuals, partnerships, corporations, trusts, government agencies, housing agencies, Indian tribes, and nonprofit organizations. 40 C.F.R. § 745.103; 24 C.F.R. § 35.86.

37. The Lead Disclosure Rule requires lessors to take the following actions before the lessee is under any obligation to lease target housing:

a. Provide the lessee with an EPA-approved lead hazard information pamphlet titled, "Protect Your Family From Lead in Your Home" (the

"Protect Your Family pamphlet") (EPA # EPA-747-K-12-001). 40 C.F.R. § 745.107(a)(1); 24 C.F.R. § 35.88(a)(1).

b. Disclose to the lessee the presence of any known lead-based paint and/or lead-based paint hazards in the target housing, as well as any additional information available concerning such paint and/or hazards, such as the basis for the determination, the location, and the condition of the painted surfaces. 40 C.F.R. § 745.107(a)(2); 24 C.F.R. § 35.88(a)(2).

c. Provide the lessee with any records or reports available to the lessor pertaining to lead-based paint and/or lead-based paint hazards in the target housing. This requirement also includes records or reports regarding other residential dwellings in multifamily target housing, provided that such information is part of an evaluation or reduction of lead-based paint and/or lead-based paint hazards in the target housing as a whole. 40 C.F.R. § 745.107(a)(4); 24 C.F.R. § 35.88(a)(4).

38. The information required to be disclosed by the Lead Disclosure Rule includes not only information related to the tenant's apartment but also information relating to common areas accessible to that tenant. 40 C.F.R. § 745.107(a)(4); 24 C.F.R. § 35.88(a)(4).

39. The Lead Disclosure Rule also requires each contract to lease target housing to contain specific elements in the contract itself, including, but not limited to:

a. A Lead Warning Statement with specific language warning about the hazards of lead-based paint in homes built before 1978, especially to young children and pregnant women. 40 C.F.R. § 745.113(b)(1); 24 C.F.R. § 35.92(b)(1).

b. A statement by the lessor disclosing the presence of known lead-based paint and/or lead-based paint hazards in the target housing being leased, or indicating no knowledge of the presence of lead-based paint and/or lead-based paint hazards. The lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of such paint and/or hazards, and the condition of the painted surfaces. 40 C.F.R. § 745.113(b)(2); 24 C.F.R. § 35.92(b)(2).

c. A list of any records or reports available to the lessor pertaining to lead-based paint and/or lead-based paint hazards in the housing that have been provided to the lessee. If no such records or reports are

available, the lessor shall so indicate. 40 C.F.R. § 745.113(b)(3); 24 C.F.R. § 35.92(b)(3).

d. A statement by the lessee affirming receipt of the information contained in 40 C.F.R. § 745.113(b)(2) & (3) and 24 C.F.R. § 35.92(b)(2) & (3) and the Renovate Right pamphlet required under 26 U.S.C. § 2696. 40 C.F.R. § 745.113(b)(4); 24 C.F.R. § 35.92(b)(4).

e. Signatures of the lessor and lessees, certifying to the accuracy of their statements, to the best of their knowledge, along with the dates of signature. 40 C.F.R. § 745.113(b)(6); 24 C.F.R. § 35.92(b)(6).

40. Tenants can take steps to protect themselves and their families when they are made aware of the potential presence of lead-based paint or lead-based paint hazards in their apartments, steps that become all the more critical when there is actual lead-based paint or lead-based paint hazards in their homes.

41. Before entering a lease for an apartment that has lead-based paint or lead-based paint hazards, a prospective tenant may decide not to sign the lease to avoid potential lead exposure to them and their family. Similarly, the family may attempt to negotiate for the landlord to control any lead-based paint hazards or abate lead-based paint as a condition to the effectiveness of the lease; if the landlord refuses, again, the family may choose not to proceed with the lease.

42. Even after moving into a unit with actual or potential lead-based paint or lead-based paint hazards, families can take specific steps to minimize the risks posed by lead-based paint, as described in the Protect Your Family pamphlet that is required to be provided to tenants under the Lead Disclosure Rule. These measures include the following:

- Always keep painted surfaces in good condition to minimize deterioration.
- Keep painted surfaces clean and free of dust. Clean floors, window frames, windowsills, and other surfaces weekly. Use a mop or sponge with warm water and a general all-purpose cleaner.
- Thoroughly rinse sponges and mop heads often during cleaning of dirty or dusty areas, and again afterward.
- Carefully clean up paint chips immediately without creating dust.
- Talk to the landlord about fixing surfaces with peeling or chipping paint.

43. Moreover, the pamphlet recommends specific steps that tenants can take to minimize risks to children:

- Wash children's hands often, especially before they eat and before nap time and bedtime.
- Keep play areas clean. Wash bottles, pacifiers, toys, and stuffed animals regularly.
- Keep children from chewing windowsills or other painted surfaces.
- Take precautions to avoid exposure to lead dust when remodeling.

44. The pamphlet also contains the recommendation that families should "consult [their] health care provider about testing [their] children for lead."

45. Failure to comply with the Lead Disclosure Rule requirements by lessors (40 C.F.R. §§ 745.107, 745.113(b); 24 C.F.R. §§ 35.88, 35.92(b)) is a violation of 42 U.S.C. § 4852d(b)(5) and TSCA Section 409, 15 U.S.C. § 2689. 40 C.F.R. § 745.118(e); 24 C.F.R. § 35.96(e).

46. Section 17(a)(1)(A) of TSCA, 15 U.S.C. § 2616(a)(1)(A), provides federal district courts with jurisdiction to restrain any violation of Section 409 of TSCA, 15 U.S.C. § 2689.

47. Section 17(a)(1)(C) of TSCA, 15 U.S.C. § 2616(a)(1)(C), provides federal district courts with jurisdiction to compel the taking of any action required under Title IV of TSCA, 15 U.S.C. § 2689.

## GENERAL ALLEGATIONS

### Defendant FHVR Redevelops Freedom's Path Ft. Harrison

48. Defendant FHVR is the ground lessee on certain real property owned by the United States pursuant to the Enhanced Use Lease of Certain Real Property and Facilities at the Fort Harrison, MT VA Medical Center, dated December 27, 2011, as amended from time to time ("Ground Lease").

49. Under the Ground Lease, Defendant FHVR rehabilitated eleven historical buildings and constructed one new residential building together to establish 42 units of supportive housing constituting Freedom's Path Ft. Harrison (the "Redevelopment").

50. Under the Ground Lease, Defendant FHVR agreed that a long-term use of the property at the Redevelopment was to provide housing for homeless veterans and homeless veterans with children.

51. On or around November 2019, Defendant FHVR submitted an application and certificate for payment to the United States indicating the Redevelopment of the historical residential units at Freedom's Path Ft. Harrison was complete.

52. Under the Ground Lease, Defendant FHVR is responsible for construction, operation, and maintenance of Freedom's Path Ft. Harrison throughout the lease term.

53. The term of the Ground Lease is for seventy-five years.

54. Most of the units are in historical buildings dating back to the time of Ft. Harrison's existence as an active military base beginning in 1895.

55. On or about March 22, 2017, Terracon Consultants, Inc. issued a preconstruction lead-based paint survey report on Defendant FHVR's behalf for Freedom's Path Ft. Harrison ("Preconstruction Lead-Based Paint Survey").

56. The Preconstruction Lead-Based Paint Survey was performed for Buildings 2, 11, 12, 13, 14, 35, 41, and 42.

57. The purpose of the Preconstruction Lead-Based Paint Survey was "to identify building materials with surface coatings that contain lead . . . that, if

disturbed during upcoming renovation activities, could potentially expose workers involved with this project and future occupants of the building. . . . The purpose of this [lead-based paint] survey was to assess and identify [lead-based paints] prior to renovation so that appropriate control measures can be implemented."

58. The Preconstruction Lead-Based Paint Survey concluded that "[i]n general, coated surfaces throughout the buildings planned for renovation are predominately lead-containing. In the event coated surfaces will be disturbed during renovation activities, the owner should assume the coatings (paints) contain lead."

59. As of August 2017, it was assumed that "every painted surface in the 11 existing buildings proposed for renovation [at Freedom's Path Ft. Harrison] contains lead-based paint."

60. A report dated August 2017 stated that "Pre-renovation cleaning and surface preparation would follow safe work practices for lead, including creating a contained work area and minimizing dust. All construction and renovation contractors would be certified lead-safe per EPA and [Montana Department of Environmental Quality] RRP Rule requirements . . . ."

61. A report dated August 2017 stated that after renovating the historical residential structures at Freedom's Path Ft. Harrison, tenants would be provided with "maintenance precautions and procedures to avoid lead-based paint."

62. A report dated August 2017 stated that after renovating the historic residential structures at Freedom's Path Ft. Harrison, "All facilities maintenance employees for [Freedom's Path Ft. Harrison] would undergo EPA lead-safe renovator training, as required by the [RRP] Rule."

63. Defendant FHVR received a copy of the August 2017 report described in Paragraphs 60–62.

64. Defendant FHVR offered to perform abatement of lead-based paint at Freedom's Path Ft. Harrison.

65. Under the Ground Lease, Defendant FHVR agreed to "complete in return for receiving . . . contribution payments" abatement of lead-based paint in the historical residential structures at Freedom's Path Ft. Harrison, to "be performed" by FHVR's general contractor.

66. Under the Ground Lease, Defendant FHVR also offered and agreed to perform renovation work in the historical residential structures at Freedom's Path Ft. Harrison.

67. The purported abatement used both removal and encapsulation as abatement methods of lead-based paints at Freedom's Path Ft. Harrison.

68. When properly performed, encapsulation and enclosure of lead-based paint permanently (which is defined to have an expected design life of at least 20

years) abates lead-based paint, but these methods do not result in the complete removal of lead-based paint. *See* 24 C.F.R. § 35.110.

69. The purported abatement described in Paragraph 67 was subject to the Abatement Rule.

70. In the alternative, the work described in Paragraph 67 was subject to the RRP Rule.

71. In addition to abatement work, the Redevelopment of Buildings 2, 3, 4, 5, 11, 12, 13, 14, 35, 41, and 42 included selective demolition, rehabilitation of historic doors, windows, and repairs to siding, soffits, and front porches.

72. The activities described in Paragraph 71 constitute renovation work. *See* 40 C.F.R. § 745.83.

73. The activities described in Paragraph 71 were subject to the RRP Rule.

74. Defendant FHVR does not pay rent to the United States under the Ground Lease.

75. Under the Ground Lease, Defendant FHVR was compensated for its purported abatement of lead-based paint in the historical residential structures at Freedom's Path Ft. Harrison.

76. Under the Ground Lease, Defendant FHVR was compensated for renovation work in the historical residential structures at Freedom's Path Ft. Harrison.

77. Defendant FHVR is a "firm" as defined at 40 C.F.R. § 745.83.

78. Defendant FHVR is not, and has never been, an EPA-certified abatement firm.

79. Defendant FHVR is not, and has never been, an EPA-certified renovation firm.

80. Defendant Beneficial Ft. Harrison Veteran Residences LLC is a "firm" as defined at 40 C.F.R. § 745.83.

81. Defendant Beneficial Ft. Harrison Veteran Residences LLC is not, and has never been, an EPA-certified abatement firm.

82. Defendant Beneficial Ft. Harrison Veteran Residences LLC is not, and has never been, an EPA-certified RRP firm.

83. Defendant FHVR's general contractor for the Redevelopment was initially ZMG Construction of Texas, LLC.

84. ZMG Construction of Texas, LLC is not and has never been, an EPA-certified abatement firm.

85. ZMG Construction of Texas, LLC is not and has never been, an EPA-certified renovation firm.

86. Whitestone Construction Group, LLC ("Whitestone Construction") assumed the contract with Defendant FHVR from ZMG Construction of Texas, LLC on or around June 25, 2018.

87. Whitestone Construction is not, and has never been, an EPA-certified abatement firm.

88. Whitestone Construction is not, and has never been, an EPA-certified renovation firm.

89. On information and belief, Whitestone Construction subcontracted with Mold Wranglers, Inc. ("Mold Wranglers") to perform lead abatement as part of the Redevelopment.

90. Mold Wranglers held an EPA abatement firm certification from May 16, 2018, through May 30, 2021.

91. Upon information and belief, FHVR directed contractors to perform encapsulation on friction and impact surfaces as part of the purported abatement work of the historical residential structures at Freedom's Path Ft. Harrison.

92. Defendant FHVR retained the authority to determine the scope of the purported abatement work of the historical residential structures during the Redevelopment, which was ultimately completed by its general contractor, Whitestone Construction, through its subcontractor, Mold Wranglers.

93. Defendant FHVR was ultimately responsible for completing the purported abatement work under the Ground Lease whether that work was accomplished by Defendant FHVR directly or through its contractors or subcontractors.

94. Redevelopment construction began on or around October 2017.

95. Defendant FHVR did not notify EPA before commencing the purported abatement during the Redevelopment.

96. Defendant Beneficial Ft. Harrison Veteran Residences LLC did not notify EPA before commencing the purported abatement during the Redevelopment.

97. ZMG Construction of Texas, LLC did not notify EPA before commencing the purported abatement during the Redevelopment.

98. Whitestone Construction did not notify EPA before commencing the purported abatement during the Redevelopment.

99. Mold Wranglers did not notify EPA before commencing the purported abatement during the Redevelopment.

100. Between March 21, 2019 and April 2, 2020, Northern Industrial Hygiene, Inc., on behalf of Defendant FHVR, performed lead-based paint clearance tests at Freedom's Path Ft. Harrison "following lead-based paint stabilization and cleaning activities," eventually determining that lead dust

concentrations in all buildings were below HUD's 2012 lead dust clearance standards at the time of each inspection.

101. Northern Industrial Hygiene's report from April 2019 determined that lead dust wipe samples from at least three buildings failed to meet HUD dust lead standards at the time of sampling.

102. Northern Industrial Hygiene's report from April 2019 recommended additional cleaning of window trough surfaces, floor surfaces, and window sills in six buildings before resampling "to determine if the cleaning was effective and the surfaces meet the HUD lead clearance requirements."

103. Northern Industrial Hygiene's lead evaluation firm certification lapsed between March 2015 and March 2021.

104. No testing has been completed under 40 C.F.R. § 745.82(a) demonstrating components in the target housing at Freedom's Path Ft. Harrison are free of paint or other surface coatings that contain lead equal to or in excess of 1.0 mg per square centimeter or 0.5% by weight.

105. After the Redevelopment, lead-based paint was still present in all of the historical residential buildings at Freedom's Path Ft. Harrison.

106. Each of the historical residential structures at Freedom's Path Ft. Harrison (Buildings 2, 3, 4, 5, 11, 12, 13, 14, 35, 41, and 42) contain housing units in buildings constructed before 1978.

107. Each of the historical residential structures at Freedom's Path Ft. Harrison (Buildings 2, 3, 4, 5, 11, 12, 13, 14, 35, 41, and 42) contain dwellings with more than zero bedrooms.

108. Each of the historical residential structures at Freedom's Path Ft. Harrison (Buildings 2, 3, 4, 5, 11, 12, 13, 14, 35, 41, and 42) contain no housing units that are reserved for the elderly or persons with disabilities.

109. Each of the historical residential structures at Freedom's Path Ft. Harrison (Buildings 2, 3, 4, 5, 11, 12, 13, 14, 35, 41, and 42) may contain housing units where children less than six years old currently reside or are expected to reside.

110. Each of the historical residential structures at Freedom's Path Ft. Harrison (Buildings 2, 3, 4, 5, 11, 12, 13, 14, 35, 41, and 42) consist of "target housing" under 42 U.S.C. § 4851b(27).

**Defendant FHVR Operates and Maintains Freedom's Path Ft. Harrison**

111. Following completion of the Redevelopment, Defendant FHVR leased residential units to tenants.

112. Defendant FHVR produced lease agreements for residential units at Freedom's Path Ft. Harrison dating back to at least January 2020 in response to a request for information by EPA.

113. Defendant FHVR remains responsible for ongoing operations and maintenance under the Ground Lease throughout its seventy-five-year term.

114. Defendant FHVR's procedures and policies for ongoing operations and maintenance activities were described in an "Operations and Maintenance Plan." Maintenance activities are stated to include all residential units and involve, among other things, repair/replacement of walls, beams, soffits, trim, repair of porches, exterior painting, window cleaning, power washing, repair/replacement of countertops, baseboards, ceilings, and windows and hardware.

115. Upon information and belief, this ongoing operation and maintenance obligation includes renovation work, including but not limited to repair of painted surfaces and painted components that disrupt more than six square feet of painted surface per room or more than 20 square feet of painted surface for exterior activities.

116. The work described in Paragraph 115 is subject to the RRP Rule.

117. At all times relevant to this complaint, FHVR has contracted with various entities as property managers of Freedom's Path Ft. Harrison.

118. Prior to June 2025, none of the entities that Defendant FHVR has retained as property managers of Freedom's Path Ft. Harrison were EPA-certified RRP firms while employed by Defendant FHVR.

119. On information and belief, at least some of the entities that Defendant FHVR has contracted with as property managers have subcontracted with additional entities to perform property management responsibilities at Freedom's Path Ft. Harrison.

120. On information and belief, none of the subcontracted entities referred to in Paragraph 119 were EPA-certified RRP firms while performing property management responsibilities at Freedom's Path Ft. Harrison.

121. Defendant FHVR, by and through its employees and its own actions, and/or its contractors and subcontractors at its direction, have performed work subject to the RRP Rule at Freedom's Path Ft. Harrison.

122. Defendant FHVR has failed to provide Renovate Right pamphlets with occupant acknowledgments or certifications under 40 C.F.R. § 745.84 in response to a request for information by EPA.

**Defendant FHVR Leased Target Housing to Lessees Without Providing Adequate Disclosures About the Risks of Lead-Based Paint to Lessees**

123. Following completion of the Redevelopment, Defendant FHVR leased residential units to tenants.

124. Defendant FHVR produced lease agreements for residential units at Freedom's Path Ft. Harrison dating back to at least January 2020 in response to a request for information by EPA.

125. Because lead-based paint remained in the historic residential structures identified in Paragraph 110 above following the Redevelopment, and because Defendant FHVR knew of the presence of such paint, Defendant FHVR was required to disclose to tenants the presence of such paint before any tenant signed a lease to live in the historic residential structures at Freedom's Path Ft. Harrison, including the basis for the determination that lead-based paint exists, the location of lead-based paint, and the condition of the painted surfaces.

126. Because lead-based paint remained in the historic residential structures identified in Paragraph 110 above following the Redevelopment, and because Defendant FHVR knew of the presence of such paint, Defendant FHVR was required to disclose to tenants any available records or reports pertaining to lead-based paint and/or lead-based paint hazards in the units, including records or reports about common areas, before any lessee signed a lease to live in the historic residential structures at Freedoms Path Ft. Harrison.

*The Preconstruction Lead-Based Paint Survey*

127. The Preconstruction Lead-Based Paint Survey first discussed in Paragraph 55 was an available record related to lead-based paint or lead-based paint hazards at the Redevelopment.

*The December 2021 Soil Lead Survey*

128. On or around November 16, 2021, Northern Industrial Hygiene, on behalf of Defendant FHVR, performed a lead in soil survey “to identify potentially hazardous soil conditions that may be present around all units located at Freedom’s Path.”

129. Northern Industrial Hygiene provided a report dated December 20, 2021, to Defendant FHVR summarizing the results of the lead in soil survey (“December 2021 Soil Lead Survey”).

130. The December 2021 Soil Lead Survey identified elevated lead levels in the soil in certain areas on the property.

131. The December 2021 Soil Lead Survey only surveyed bare soil and driplines.

132. The December 2021 Soil Lead Survey stated that “if the exterior paint which contains lead is in poor or damaged condition the paint can flake off, accumulate in the soil and cause elevated levels of lead in the soil. Exposure to the contaminated soil may result in elevated blood lead levels by ingestion.”

133. The December 2021 Soil Lead Survey references the definition of soil-lead hazard at 40 C.F.R. § 745.65(c) and stated that “Soil is deemed to have elevated lead levels when laboratory results show lead concentrations about 400

parts per million (ppm) in areas where children play . . . or 1,200 ppm in areas that children are unable to access."

134. The December 2021 Soil Lead Survey reported lead concentrations at 600 ppm in dripline soil around Building 42.

135. The December 2021 Soil Lead Survey reported lead concentrations at 1,700 ppm in dripline soil around Building 11.

136. The December 2021 Soil Lead Survey reported lead concentrations at 560 ppm in dripline soil around Building 12.

137. The December 2021 Soil Lead Survey reported lead concentrations at 1,800 ppm in dripline soil around Building 14.

138. The December 2021 Soil Lead Survey recommended "retaining the services of a certified lead abatement company to remove the top 6 to 8 inches of soil around these buildings and replace with virgin soil."

139. The December 2021 Soil Lead Survey recommended "that prior to starting the soil abatement project, exterior lead-based paint risk assessments be conducted on the exterior of [Buildings 11, 12, 14, and 42] to determine if exterior LBP hazards requiring abatement exist. If the assessments indicate exterior LBP abatement is recommended for these buildings, the exterior paint abatement should be conducted prior to conducting the soil abatement activities."

140. Lead-based paint hazard means hazardous lead-based paint, dust-lead hazard or soil-lead hazard as identified in 40 C.F.R. § 745.65. 40 C.F.R. § 745.63.

141. The December 2021 Soil Lead Survey was an available record related to lead-based paint or lead-based paint hazards in a common area of the Redevelopment.

*The May 2023 Risk Assessment*

142. On or about September 28, 2021, one tenant verbally informed Defendant FHVR's property manager that one of the tenant's children under six years of age had an elevated blood lead level.

143. Between March and April 2023, TD&H Engineering, Inc. on behalf of the State of Montana Department of Commerce performed a lead risk assessment of all 42 housing units and associated common areas at Freedom's Path Ft. Harrison.

144. TD&H Engineering issued a report of its risk assessment dated May 4, 2023 ("May 2023 Risk Assessment").

145. The May 2023 Risk Assessment reported that the pre-1978 residential units at the Redevelopment "are not considered to be in good condition for the purposes of a risk assessment."

146. The May 2023 Risk Assessment concluded that a lead hazard exists at the site and that "Deteriorated painted surfaces are the most probable source of the [elevated blood lead levels]."

147. The May 2023 Risk Assessment reported that the average result for lead concentration sampled from window troughs in residential units at the Redevelopment was 5,838 micrograms of lead per square foot.

148. The May 2023 Risk Assessment reported that the HUD issued dust-lead clearance standard in homes for window troughs is 100 micrograms of lead per square foot.

149. The May 2023 Risk Assessment reported that the average result for lead concentration sampled from window sills in residential units at the Redevelopment was 480 micrograms of lead per square foot.

150. The May 2023 Risk Assessment reported that the HUD issued dust-lead clearance standard in homes for interior window sills is 100 micrograms of lead per square foot. At the time, surface dust containing 100 micrograms of lead or more per square foot for interior windowsills in residential dwellings constitutes a dust-lead hazard. 40 CFR § 745.65(b).

151. The May 2023 Risk Assessment reported that the average result for lead concentration sampled from interior floors in residential units at the Redevelopment was 36 micrograms of lead per square foot.

152. The May 2023 Risk Assessment reported that the HUD issued dust-lead clearance standard in homes for interior floors is 10 micrograms of lead per square foot.

153. The May 2023 Risk Assessment reported that "[o]n average, lead concentrations exceed the HUD clearance standard for each of the component tested" in all but one of the residential units.

154. The May 2023 Risk Assessment was an available record related to lead-based paint or lead-based paint hazards at the Redevelopment.

155. Defendant FHVR received a copy of the May 2023 Risk Assessment.

156. The May 2023 Risk Assessment provided Defendant FHVR with notice of the existence of lead-based paint and lead-based paint hazards in Buildings 2, 3, 4, 5, 11, 12, 13, 14, 35, 41, and 42 at Freedom's Path Ft. Harrison.

157. Between January 2020 and September 2021, Defendant FHVR entered into at least 38 contracts to lease target housing at the Redevelopment without providing the lessees with the Protect Your Family pamphlet.

158. Between January 2020 and September 2021, Defendant FHVR entered into at least 38 contracts to lease target housing at the Redevelopment that failed to contain the required Lead Warning Statement.

159. Between January 2020 and December 2023, Defendant FHVR entered into at least 75 contracts to lease target housing at the Redevelopment

without disclosing to the lessees information concerning known lead-based paint and/or lead-based paint hazards before the lessees leased their respective units.

160. At least seven of the lessees referred to in Paragraph 159 were current residents of Ft. Harrison Freedom's Path as of September 2024.

161. Between January 2020 and December 2023, Defendant FHVR entered into at least 75 contracts to lease target housing at the Redevelopment that failed to contain an accurate statement by the lessor disclosing the presence of lead-based paint and/or lead-based paint hazards in the target housing, including the basis for the determination of the existence of lead-based paint, the location of such paint, and the condition of the painted surfaces.

162. Between January 2020 and December 2023, Defendant FHVR entered into at least 75 contracts to lease target housing without providing the Preconstruction Lead Based Paint Survey to the lessees.

163. At least seven of the lessees referred to in Paragraph 162 were current residents of Ft. Harrison Freedom's Path as of September 2024.

164. Between January 2022 and December 2023, Defendant FHVR entered into at least 23 contracts to lease target housing without providing the December 20, 2021 Soil Lead Survey to the lessees.

165. At least seven of the lessees referred to in Paragraph 164 were current residents of Ft. Harrison Freedom's Path as of September 2024.

166. Since June 2023, Defendant FHVR entered into at least 10 contracts to lease target housing without providing the May 2023 Risk Assessment to the lessees.

167. Between January 2020 and December 2023, Defendant FHVR entered into at least 75 contracts to lease target housing at the Redevelopment that failed to list any records or reports available to the Defendant FHVR pertaining to lead-based paint and/or lead-based paint hazards in the housing that have been provided to the lessees.

*Need for Relief*

168. Veterans and their families are expected to continue to seek and live in supportive housing units at Freedom's Path Ft. Harrison.

169. Defendant FHVR (through its property manager) was verbally informed that a child under the age of six with an elevated blood lead level lived in target housing at Freedom's Path Ft. Harrison.

170. As of October 2024, children under the age of six live in target housing at Freedom's Path Ft. Harrison.

171. Without complete and accurate disclosures about known lead-based paint and/or lead-based paint hazards, prospective tenants of Freedom's Path Ft. Harrison are unable to make decisions about their future housing, take steps to protect themselves and their families from potential exposure to lead-based paint

and/or lead-based paint hazards, or seek appropriate medical care with the benefit of information that Defendant FHVR was required to provide by law before tenants signed their leases.

172. Current tenants at Freedom's Path Ft. Harrison who did not receive complete and accurate disclosures were deprived of the ability to make decisions about living at Freedom's Path Ft. Harrison with the benefit of information that Defendant FHVR was required to provide by law before tenants signed their leases.

173. Current tenants at Freedom's Path Ft. Harrison who did not receive complete and accurate disclosures were deprived of the opportunity to negotiate with Defendants to control known lead-based paint hazards or abate lead-based paint as a condition to the effectiveness of the lease with the benefit of information that Defendant FHVR was required to provide by law before tenants signed their leases.

174. Current tenants at Freedom's Path Ft. Harrison who did not receive complete and accurate disclosures were deprived of the opportunity to make decisions about whether to take additional steps to protect themselves and their families from potential exposure to known lead-based paint and/or lead-based paint hazards with the benefit of information that Defendant FHVR was required to provide by law before tenants signed their leases.

175. Current tenants at Freedom's Path Ft. Harrison who did not receive complete and accurate disclosures were deprived of the opportunity to make decisions about the types of medical care they could seek for themselves and their families about potential exposure to lead with the benefit of information that Defendant FHVR was required to provide by law before tenants signed their leases.

176. Defendant FHVR's continued failure to provide complete, accurate, and timely disclosures about known lead-based paint and/or lead-based paint hazards places tenants of Freedom's Path Ft. Harrison at risk of irreparable harm from exposure to lead.

## FIRST CLAIM FOR RELIEF

**Violations of TSCA and Abatement Rule**

**Failure to Obtain EPA Certification to Perfor a Lead-Based Paint Abatement**

15 U.S.C. § 2689; 40 C.F.R. § 745.226(f); 40 C.F.R. § 745.227(e); 40 C.F.R. § 745.235(d)(ii)

177. The United States restates Paragraphs 1 through 176 above.

178. Defendant FHVR offered to perform lead-based paint activities (i.e., abatement) described in 40 C.F.R. § 745.227.

179. Defendant FHVR failed to obtain EPA certification for its contractors to perform lead-based paint abatement at Freedom's Path Ft. Harrison pursuant to 40 C.F.R. § 745.227(e)(1).

180. Defendant FHVR hired contractors without EPA abatement certification to perform lead-based paint abatement on Defendant FHVR's behalf at Freedom's Path Ft. Harrison despite certification being required under 40 C.F.R. § 745.227(e)(1).

181. Defendant FHVR's abatement activities, including its violations of the Abatement Rule's certification requirements, threaten irreparable harm to the health and safety of people living in or near Freedom's Path Ft. Harrison where Defendant FHVR has offered to perform abatement activities, to visitors to these buildings, and to the workers involved in the abatements. Defendant FHVR's abatement activities likewise threaten irreparable harm to the United States' ability to protect the public from the harmful effects of lead exposure.

182. Based on the above allegations, Defendant FHVR violated TSCA Section 409, 15 U.S.C. § 2689, and the Abatement Rule, 40 C.F.R. § 745.226(f); 40 C.F.R. §§ 745.227(e), 745.235(d)(ii) at Freedom's Path Ft. Harrison.

183. Based on the above allegations, Defendant Beneficial Ft. Harrison Veteran Residences LLC is jointly and severally liable for Defendant FHVR's liabilities. *See* Fla. Stat. § 620.1404(1).

184. Under TSCA Section 17, 15 U.S.C. § 2616(a), Defendants are subject to injunctive relief for their violations of TSCA and the Abatement Rule.

## <u>SECOND CLAIM FOR RELIEF</u>

**Violations of TSCA and the Abatement Rule:**
**Failure to Notify EPA Prior to Commencing a Lead-Based Paint Abatement and Failure to Follow Work Practice Standards When Performing Abatement**
15 U.S.C. § 2689; 40 C.F.R. § 745.227(e)

185. The United States restates Paragraphs 1 through 176 above.

186. Defendant FHVR failed to notify EPA before commencing the abatement activities included in the Redevelopment.

187. Defendant FHVR's contractors also failed to notify EPA before commencing the abatement activities included in the Redevelopment.

188. Upon information and belief, Defendant FHVR, its contractors, and/or subcontractors failed to follow work practice standards under 40 C.F.R. § 745.227(e) when conducting abatement activities included in the Redevelopment.

189. Without judicial relief, Defendant FHVR will continue to violate TSCA and the Abatement Rule.

190. Defendant FHVR's abatement activities, including its violations of the Abatement Rule's notification requirements, threaten irreparable harm to the health and safety of people living in or near Freedom's Path Ft. Harrison where Defendant FHVR has offered to perform abatement, to visitors to these buildings, and to the workers involved in these abatements. Defendant FHVR's abatement activities likewise threaten irreparable harm to the United States' ability to protect the public from the harmful effects of lead exposure.

191. Based on the above allegations, Defendant FHVR violated TSCA Section 409, 15 U.S.C. § 2689, and the Abatement Rule, 40 C.F.R. § 745.227(e)(4) at Freedom's Path Ft. Harrison.

192. Based on the above allegations, Defendant Beneficial Ft. Harrison Veteran Residences LLC is jointly and severally liable for Defendant FHVR's liabilities. *See* Fla. Stat. § 620.1404(1).

193. Under TSCA Section 17, 15 U.S.C. § 2616(a), Defendants are subject to injunctive relief for their violations of TSCA and the Abatement Rule.

## THIRD CLAIM FOR RELIEF
### Violations of TSCA and the RRP Rule: Failure to Obtain EPA Certification to Perform a Lead-Based Paint Renovation

15 U.S.C. § 2689; 40 C.F.R. § 745.89; 40 C.F.R. § 745.81(a)(2)(ii)

194. The United States restates Paragraphs 1 through 176 above.

195. Defendant FHVR failed to obtain EPA certification as required to offer or perform (through its contractors) lead-based paint renovation work at Freedom's Path Ft. Harrison from at least the beginning of the Redevelopment through the date of this Complaint.

196. Without judicial relief, Defendant FHVR will continue to violate TSCA and the RRP Rule.

197. Defendant FHVR's renovation activities, including its violations of the RRP Rule's certification requirements, threaten irreparable harm to the health

and safety of people living in or near buildings at Freedom's Path Ft. Harrison where Defendant FHVR has offered to perform renovation activities, to visitors to these buildings, and to the workers involved in the abatements. Defendant FHVR's renovation activities likewise threaten irreparable harm to the United States' ability to protect the public from the harmful effects of lead exposure.

198. Based on the above allegations, Defendant FHVR violated TSCA Section 409, 15 U.S.C. § 2689, and the RRP Rule, 40 C.F.R. §§ 745.89, 745.81(a)(2)(ii), at Freedom's Path Ft. Harrison.

199. Based on the above allegations, Defendant Beneficial Ft. Harrison Veteran Residences LLC is jointly and severally liable for Defendant FHVR's liabilities. *See* Fla. Stat. § 620.1404(1).

200. Under TSCA Section 17, 15 U.S.C. § 2616(a), Defendants are subject to injunctive relief for their violations of TSCA and the RRP Rule.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**Violations of TSCA and the RRP Rule:**
**Failure to Provide Renovate Right Pamphlet**
15 U.S.C. § 2689; 40 C.F.R. 745.81(b); 40 C.F.R. § 745.84; 40 C.F.R. § 745.86; C.F.R. § 745.89

201. The United States restates Paragraphs 1 through 176 above.

202. Defendant FHVR violated the RRP Rule's Renovate Right pamphlet requirements by failing to provide Renovate Right pamphlet to the occupants of Freedom's Path Ft. Harrison, and/or retain records demonstrating occupants

received the Renovate Right pamphlet, in violation of 40 C.F.R. §§ 745.81(b), 745.84, 746.86(b), and 745.89(d), and 15 U.S.C. § 2689.

203. Without judicial relief, Defendant FHVR will continue to violate TSCA and the RRP Rule.

204. Defendant FHVR's violation of the RRP Rule's Renovate Right pamphlet requirements threatens irreparable harm to the health and safety of people living in or near buildings at Freedom's Path Ft. Harrison where Defendant FHVR performs renovation activities and to visitors to these buildings. Defendant FHVR's violation likewise threatens irreparable harm to the United States' ability to protect the public from the harmful effects of lead exposure.

205. Based on the above allegations, Defendant FHVR violated TSCA Section 409, 15 U.S.C. § 2689, and the RRP Rule, 40 C.F.R. §§ 745.81(b) and 745.84, at Freedom's Path Ft. Harrison.

206. Based on the above allegations, Defendant Beneficial Ft. Harrison Veteran Residences LLC is jointly and severally liable for Defendant FHVR's liabilities. *See* Fla. Stat. § 620.1404(1).

207. Under TSCA Section 17, 15 U.S.C. § 2616(a), Defendants are subject to injunctive relief for their violations of TSCA and the RRP Rule.

**FIFTH CLAIM FOR RELIEF**

**Violations of the Residential Lead-Based Paint Hazard Reduction Act of 1992, TSCA, and the Lead Disclosure Rule:**

**Failure to Disclose the Existence of Known Lead-Based Paint and/or Lead-Based Paint Hazards**

42 U.S.C. § 4852d(b)(5); 15 U.S.C. § 2689; 40 C.F.R. § 745.118(e), 40 C.F.R. § 745.107(a)(2); 24 C.F.R. § 35.96(e), 24 C.F.R. § 35.88(a)(2)

208. The United States restates Paragraphs 1 through 176 above.

209. At all relevant times, Defendant FHVR has been a lessor of target housing under 40 C.F.R. § 745.103 and 24 C.F.R. § 35.86.

210. Between January 2020 and December 2023, Defendant FHVR entered into at least 75 contracts to lease target housing at the Redevelopment that failed to disclose to lessees information concerning known lead-based paint and/or lead-based paint hazards, as required by 40 C.F.R. § 745.107(a)(2) and 24 C.F.R. § 35.88(a)(2).

211. Between January 2020 and December 2023, Defendant FHVR entered into at least 75 contracts to lease target housing at the Redevelopment that failed to contain an accurate statement by the lessor disclosing the presence of lead-based paint and/or lead-based paint hazards in the target housing as required by 40 C.F.R. § 745.113(b)(2) and 24 C.F.R. § 35.92(b)(2).

212. Defendant FHVR failed to disclose the existence of known lead-based paint and/or lead-based paint hazards in target housing leased by Defendant FHVR to current lessees.

213. By failing to provide timely disclosures to lessees about the safety of their future potential homes, FHVR deprived the lessees of information required by law that would have helped lessees understand whether any lead-based paint and/or lead-based paint hazards were present in their homes.

214. Without judicial relief, Defendant FHVR will continue to violate TSCA, the Residential Lead-Based Paint Hazard Reduction Act of 1992, and the Lead Disclosure Rule.

215. Defendant FHVR's failure to disclose the existence of known lead-based paint and/or lead-based paint hazards in target housing before leasing target housing at Freedom's Path Ft. Harrison threatens irreparable harm to the lessees. Defendant FHVR's violations of the Lead Disclosure Rule likewise threaten irreparable harm to the United States' ability to protect the public from the harmful effects of lead exposure.

216. Based on the above allegations, Defendant FHVR violated TSCA Section 409, 15 U.S.C. § 2689, 42 U.S.C. § 4852d(b)(5), and the Lead Disclosure Rule, 40 C.F.R. §§ 745.118(e), 745.107(a)(2), 24 C.F.R. §§ 35.96(e), 35.88(a)(2), at Freedom's Path Ft. Harrison.

217. Based on the above allegations, Defendant Beneficial Ft. Harrison Veteran Residences LLC is jointly and severally liable for Defendant FHVR's liabilities. *See* Fla. Stat. § 620.1404(1).

218. Under TSCA Section 17, 15 U.S.C. § 2616(a), Defendants are subject to injunctive relief for their violations of TSCA, 42 U.S.C. § 4852d, and the Lead Disclosure Rule.

## SIXTH CLAIM FOR RELIEF

**Violations of the Residential Lead-Based Paint Hazard Reduction Act of 1992, TSCA, and the Lead Disclosure Rule:**
**Failure to Provide Reports About Lead-Based Paint and/or Lead-Based Paint Hazards**

42 U.S.C. § 4852d(b)(5), 15 U.S.C. § 2689; 40 C.F.R. § 745.118(e), 40 C.F.R. § 745.107(a)(4); 24 C.F.R. § 35.96(e), 24 C.F.R. § 35.88(a)(4)

219. The United States restates Paragraphs 1 through 176 above.

220. At all relevant times, Defendant FHVR has been a lessor of target housing under 40 C.F.R. § 745.103 and 24 C.F.R. § 35.86.

221. Between January 2020 and December 2023, Defendant FHVR entered into at least 75 contracts to lease target housing at the Redevelopment without providing available records pertaining to lead-based paint and/or lead-based paint hazards in target housing to lessees as required by 40 C.F.R. § 745.107(a)(4) and 24 C.F.R. § 35.88(a)(4).

222. Between January 2020 and December 2023, Defendant FHVR entered into at least 75 contracts to lease target housing at the Redevelopment that failed to list any available records or reports pertaining to lead-based paint and/or lead-based paint hazards to the lessees as required by 40 C.F.R. § 745.113(b)(3) and 24 C.F.R. § 35.92(b)(3).

223. Defendant FHVR failed to provide available records and reports pertaining to lead-based paint and/or lead-based paint hazards in target housing leased by Defendant FHVR to current tenants, including the Preconstruction Lead Based Survey, the December 2021 Soil Survey, and/or the May 2023 Risk Assessment.

224. By failing to provide timely disclosures to lessees about the safety of their future potential homes, FHVR deprived the lessees of information required by law that would have helped lessees understand whether any lead-based paint and/or lead-based paint hazards were present in their homes.

225. Without judicial relief, Defendant FHVR will continue to violate TSCA, the Residential Lead-Based Paint Hazard Reduction Act of 1992, and the Lead Disclosure Rule.

226. Defendant FHVR's failure to provide available records and reports about known lead-based paint and/or lead-based paint hazards in target housing before leasing target housing at Freedom's Path Ft. Harrison threatens irreparable harm to the lessees. Defendant FHVR's violations of the Lead Disclosure Rule likewise threaten irreparable harm to the United States' ability to protect the public from the harmful effects of lead exposure.

227. Based on the above allegations, Defendant FHVR violated TSCA Section 409, 15 U.S.C. § 2689, 42 U.S.C. § 4852d(b)(5), and the Lead Disclosure

Rule, 40 C.F.R. §§ 745.118(e), 745.107(a)(4), 24 C.F.R. §§ 35.96(e), 35.88(a)(4), at Freedom's Path Ft. Harrison.

228. Based on the above allegations, Defendant Beneficial Ft. Harrison Veteran Residences LLC is jointly and severally liable for Defendant FHVR's liabilities. *See* Fla. Stat. § 620.1404(1).

229. Under TSCA Section 17, 15 U.S.C. § 2616(a), Defendants are subject to injunctive relief for their violations of TSCA, 42 U.S.C. § 4852d, and the Lead Disclosure Rule.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court:

A. Enter judgment against Defendants and in favor of the United States for the violations alleged in this Complaint;

B. Enter an order under 15 U.S.C. § 2616(a)(1)(C) compelling Defendants to perform lead abatement at Freedom's Path Ft. Harrison in accordance with TSCA and the Abatement Rule;

C. Enter a permanent injunction compelling Defendants to comply with TSCA, the Abatement Rule, the RRP Rule, and the Lead Disclosure Rule at Freedom's Path Ft. Harrison; and

D. Provide for any and all other relief that this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division

_/s/Sylvia Lam_____________________
Sylvia Lam
Trial Attorney
Environmental Enforcement Section
Energy and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

MARK STEGER SMITH
Acting United States Attorney
District of Montana

_/s/ Shannon L. Clarke________________
SHANNON L. CLARKE
Assistant U.S. Attorney

Of counsel:

Nicholas DiMascio, Esq.
Noah Stanton, Esq.
Office of Regional Counsel
U.S. Environmental Protection Agency Region VIII

Lee Ann Richardson, Esq.
Sara Assaid, Esq.
Office of General Counsel
U.S. Department of Housing and Urban Development